1   Brian Neach (SBN 242801)
    (bneach@pncounsel.com)
2   PACHECO & NEACH P.C.
3   3 Park Plaza, Suite 120
    Irvine, CA 92614
4   Telephone: (714) 462-1700
    Facsimile: (714) 462-1785
5
6   John D. Goldsmith (*Pro Hac Vice Pending*)
    (jdgoldsmith@trenam.com)
7   TRENAM, KEMKER, SCHARF, BARKIN,
    FRYE, O'NEILL & MULLIS, PA
8   101 East Kennedy Boulevard
    Bank of America Plaza, Suite 2700
9   Tampa, FL 33602
    Phone:  (813) 223-7474
10  Facsimile:  (813) 229-6553

11  *Attorneys for Plaintiff Worth &*
    *Company, Inc.*
12

13                **UNITED STATES DISTRICT COURT**

14               **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15   WORTH & COMPANY, INC., A Pennsylvania Corporation, | Case No. 3:19-cv-918 |
| 16                      Plaintiff, | **COMPLAINT OF WORTH & COMPANY, INC. FOR:** |
| 17         v. | |
| 18                                             | **(1)  Breach of Contract (Master Agreement)** |
| 19   ORACLE AMERICA, INC., a Delaware corporation | **(2)  Breach of Contract (Subscription Agreement)** |
| | **(3)  Breach of Contract (Additional Oracle Agreements)** |
| 20                      Defendant. | **(4)  Breach of Duty of Good Faith & Fair Dealing** |
| 21 | **(5)  Breach of Warrant of Fitness for Particular Purpose** |
| 22 | **(6)  Breach of Warranty of Merchantability** |
| 23 | **(7)  Rescission of Master Agreement**<br>**(8)  Rescission of Subscription Agreement** |
| 24 | **(9)  Rescission of Additional Oracle Agreements** |
| 25 | **(10) Fraudulent Misrepresentation**<br>**(11) Negligent Misrepresentation** |
| 26 | **(12) Breach of Warranty** |
| 27 | **JURY TRIAL DEMANDED** |

28   COMPLAINT OF WORTH & COMPANY, INC.                    Case No. 3:19-cv-918

# COMPLAINT

Plaintiff, Worth & Company, Inc. ("Worth") sues Defendant, Oracle America, Inc. ("Oracle") and states as follows:

## Nature of the Claim

1.      Worth seeks money damages or rescission for Oracle's breach of contract and breach of warranty of merchantability and fitness for a particular purpose based on Oracle's failure to provide an enterprise resource planning (ERP) software system compatible for use in Worth's business as a mechanical contractor.  Despite Oracle's representations that its integrated software system, i-cloud services, and technical support system was a functioning workable product fully capable of fulfilling Worth's needs, Oracle failed to provide a collectively suitable and operable software system.  Worth paid in excess of $4,500,000.00 to purchase and implement the ultimately non-functioning Oracle ERP product. Alternatively, Worth seeks money damages or rescission under California law for Oracle's negligent and continued misrepresentations that the integrated software system was suitable for Worth's needs.

## Parties, Jurisdiction and Venue

2.      Worth is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Pipersville, Pennsylvania.  It is a citizen of the State of Pennsylvania.

3.      Worth is a full-service mechanical contractor in the Mid-Atlantic region providing services in the public and private market places.   Worth provides general contracting, construction, fabrication and field services, including small or full-scaled HVAC and plumbing construction projects.

4.      Worth has four distinct profit centers:  (a) general contracting of water and wastewater treatment infrastructure projects; (b) design build/plan and spec installation of HVAC, plumbing, process piping and controls systems for commercial market; (c) construction services which include manufacturing of prefabricated assemblies, logistics,

1

tool rental, and general services to the construction projects; and (d) field service and maintenance programs for HVAC, plumbing and controls systems for the commercial market.

5.      Oracle is a corporation organized under the laws of the State of Delaware with is principal place of business at 500 Oracle Parkway, Redwood City, California 94065.

6.      Oracle is a company that specializes primarily in developing and marketing database software and technology, cloud engineered systems, and enterprise software products, including its own brands of database management systems, including enterprise resource planning (ERP) software.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Worth is a citizen of a state different than Oracle and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Oracle because, as more fully it expressly agreed to be bound by the Master Agreement containing a governing law provision which states that the parties agree to venue in the courts in San Francisco or Santa Clara counties in California.

9.      Venue is proper in this Court pursuant to the aforementioned venue selection provision within the Master Agreement and pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

**Facts Giving Rise to this Action**

*The Initial Negotiations*

10.      In 2014, Worth decided to change its current ERP system with a new ERP system that would seamlessly provide an integrated system of conducting the business of Worth's various departments and functions.  Worth was looking for a version of an ERP system that contained the critical functionality required for contractors, including such processes for CRM, Financials (GL, AP, AR, Fixed Assets), Procurement Service Management (Purchasing), Inventory Management, Project (billing, costing and management), and HR (payroll, benefit & Taleo).

2

11.     To determine whether a particular ERP system would satisfy its critical business requirements, Worth devoted almost an entire year to identifying the particular requirements it needed in an ERP system and identifying software companies that specialized in enterprise resource systems.

12.     By summer of 2014, Worth engaged in discussions with several software solution providers to evaluate the best system for Worth.

13.     One such provider was Oracle, whose sales representative discussed its Enterprise Resource Planning solution (ERP) with Worth. Oracle proposed to come to Worth in early July 2014 to conduct discovery sessions.

14.     These initial introductions resulted in multiple meetings, demonstrations of the Oracle ERP software product and "validation sessions" involving multiple Oracle representatives to key management personnel at Worth.

15.     Worth specifically explained and identified to Oracle the nature of its business; the volume of purchases and transactions, customers, projects, change order management; the need for analytics for financial performance purposes; and sales prospecting for customers from initial contact through product delivery.

16.     In fact, Oracle requested and Worth provided certain data requests for its demonstration/validation sessions with Worth.  Worth discussed and provided to Oracle a detailed project management list of all of the items Worth wanted to ensure the new ERP solution would handle.  This data request included a project example with work break down structures, sample BOM, sample routers, sample items, sample drawings, same quote, and project billing structures and rate tables.

17.     Worth described its current processes and systems, the cumbersome nature of its manual interfaces, and the inefficiencies of its operational use.  Worth described all of its "pain points" regarding its current situation.

18.     In connection with its ERP selection project, Worth invited multiple suppliers to bid on the specific product system (its request for quotation or RFQ).  The RFQ included an invitation to Oracle.

19.     On October 31, 2014, Oracle submitted its request for proposal response to Worth.

20.     In November 2014, Oracle confirmed with Worth that it would have a demonstration of Oracle's ERP software for Worth's evaluation and on December 11, 2014, scheduled a demonstration/implementation workshop to be conducted by Oracle.  An agenda was provided and covered the following:  1. Marketing, Sales, & Estimation; 2. Project Management; 3. Service; 4. Manufacturing and Operations; 5. HR; 6. Finance; and 7. IT.

21.     On December 11, 2014, Oracle led an all-day, comprehensive demonstration wherein all of the agenda items referenced above were discussed in detail.

22.     The next steps Oracle outlined to Worth would be an Oracle Implementation Workshop to be broken down by business area.  This was to occur in early January 2015.

23.     During this process, Oracle introduced Ken Lockhart with EDREI Solutions, LLC ("EDREi") to Worth.  EDREi was a full-service IT organization focused on designing and implementing Oracle's business systems.  It provided Oracle application consulting and implementation services.

24.     EDREi requested and Worth provided certain data requests for its demonstration/validation sessions with Worth.

25.     On February 4, 2015, EDREi provided Worth with a proposal to implement the specific Oracle E-Business Suite or "EBS" applications.

26.     Throughout the bidding and negotiation of the implementation services contracts, Oracle represented that all of Worth's business requirements would be met by the EBS application.

27.     Oracle proposed Worth purchase, integrate and implement two of its ERP system software packages:  its E-Business Suite Applications and its Cloud Services.

28.     The E-Business Suite Applications included applications for: financials; project costing, billing, collaboration, resource management, project management; Endeca extensions for project management, discrete manufacturing, inventory management; discrete manufacturing; mobile supply chain for discrete manufacturing, inventory management; procurement, iProcurement, purchase, project procurement, procurement contracts, services procurement, subcontracting, iSupplier portal; and time and labor, payroll, human resources.

29.     The Cloud Services included Fusion CRM, data quality; Fusion human capital management, Fusion performance management; Fusion transactional business intelligence for customer relationship management, Taleo platform cloud service, recruiting, onboarding, Taleo analytics; Oracle java cloud services, and oracle database cloud services.

***The Execution and Implementation of the Oracle ERP System***

30.     Based on Oracle's representations and live demonstrations of Oracle's product, Worth selected Oracle's ERP system as it was represented to Worth that it would be the best choice.

31.     On February 20, 2015, Worth executed the following documents:

a.     Oracle's "Executable Quote," which incorporates the Oracle Master Agreement, for the Oracle project billing costing, software licenses and support, inventory management, project procurement and all related licenses and support in connection with the EBS (the "Master Agreement"), a true and correct copy of the Master Agreement is attached hereto as Exhibit A and incorporated herein by reference; and

b.     Oracle's "Ordering Document" for Oracle Cloud Services subscription agreement for, *inter alia* 36 months of cloud services and related software licenses and support (the "Subscription Agreement"), a true and correct copy of the Subscription Agreement is attached hereto as Exhibit B and incorporated herein by reference.

COMPLAINT OF WORTH & COMPANY, INC.   Case No. 3:19-cv-918

32.     Under the Master Agreement, Worth agreed to pay $233,480.79 for the licensing of the software system.

33.     Under the Subscription Agreement, Worth agreed to pay $235,706.69 for the icloud based services.

34.     Contemporaneously with the signing the Master Agreement and Subscription Agreement, Worth, Oracle and EDREi exchanged emails and had face-to-face visits to further ensure that Oracle fully appreciated Worth's requirements regarding the EBS application before the parties agreed on a Professional Services Statement of Work Order No. 1 for implementation of the EBS application.

35.     As a result of the decision to purchase the EBS applications from Oracle, in March 2015, Oracle began to provide support through its Implementation Success team and the configuring of the software system with EDREi.

36.     The initial project roadmap including the following: (a) user familiarization training; (b) enterprise data design; (c) staggered configuration, extension, modification, localization and integration ("CEMLI"); (d) user familiarization training post integration; (e) final configuration of product; and (f) train users.  The implementation was in stages with an initial "go-live" date slated for fall 2015.

37.     Oracle, Worth and EDREi continued to communicate with each other regarding Oracle's role for cloud services, implementation, execution and presentations to Worth, and the overall "Oracle Implementation Planning."

38.     After the decision to go with Oracle, EDREi began the EBS implementation at Worth's headquarters, deploying multiple people at Worth and spending significant time on the EBS implementation process, including:

> a. In April and May 2015 – meeting with Worth executive regarding functionality and usage;  discussing service system interface; setting up EBS systems, HR accounting flexfield segments; setting up value sets; reviewing commdata process, conversion, enhanced project plan, cloud site

development; setting up customer data, defined locations commdata, Oracle Inventory/purchasing profile options; setting up locations, inventory flexfields, HR flexfields; configuring summary accounts; setting up project billing AIA setups, VPN setups for remote access, data conversion, sales cloud demo of TEST;

b. In June and July, 2015 – starting the supplier load process, admin training, revising the project plan, separating out cloud and EBS timing, data extract, starting the transform process, AP configuration, reporting for AP and AR, commdata testing, cloud data import, training.

39.    During this time, Oracle was coordinating with Worth its cloud services and explanation of the ISM role, including resources to learn about cloud services, best practices in cloud implementation, considerations in implementation planning, the role of Oracle as the ISM, and the need to work with Oracle during the implementation phase.

40.    It was apparent that by summer of 2015, the original "go live" date was not attainable as implementation was on-going.

41.    EDREi continued with the EBS implementation process well into the fall of 2015, including the following:

a. In August, 2015 – coding customer conversion program, starting BR 100 for AR, AP, PO, iProcurement, review of Oracle System, employee conversion, CRM, project review, PM Setups, Performance reporting setups, GL data mapping, project overview, project planning, contracts management, AIA form prep, AIA demo, sales cloud performance, AR billing testing;

b. In September 2015 – CRP1 configuration changes, requisition template, iprocurement catalog, change order and AIA bug resolution testing, impact testing, FA setup, CRP2 planning, MFG project integration, FA setup and unit testing, AP conversion, Payroll;

c.  In October 2015 – CRP review and process changes/configuration documents, discuss manufacturing concerns, accounting flexfield documentation, on site project costing, bulling to be, project costing billing configuration, project templates;

d.  In November 2015 – testing instance set up AR, data conversation AR, data conversion supplier, tax setup AIA meeting, AIA invoicing testing;

42.    In the fall 2015, Oracle set up training ON Demand classes for Worth through the fall/winter 2015.

43.     By October 2015, it was clear that the implementation of the EBS system was still at the CEMLI stage, with multiple issues involving the conversion and integration of Worth data to an Oracle accepted format.  Many of these issues were labeled as "failed" items with the inability to verify if the programs ran properly.

44.    Each Worth department provided a detailed list of the business requirements that were not met by the Oracle system, or in which customization to fit Worth's original needs had to be further implemented.

45.    Oracle was intimately working with Worth and EDREi in resolving the implementation issues between the Oracle software and Worth's processes.  Multiple open items remained pending with Oracle.

46.    Worth noted multiple set-backs and issues with the Oracle system and expressed these concerns directly to Leo Mullen, with Oracle, who in turn advised Worth to "pressure support to increase their attention."  Support now also consisted of the Oracle Account Engagement team.

47.    By November 2015, it was evident to both Oracle and Worth that the on-premises implementation and cloud integration was seriously delayed and wrought with issues.  Oracle continued to provide assurances that it would work through all of the issues and that its EBS system was the most efficient program for Worth, and that Worth's needs would be fulfilled by the EBS system.

48.     With these continued assurances, Worth worked with both Oracle and EDREi in revising its implementation planning project and updating and providing a list of issues regarding the ERP system.

49.     EDREi and Worth discussed the Oracle ERP implementation planning project overview.  This plan projection delayed the "go-live" date to February 2016, with additional implementation assistance through May 2016.

50.     In furtherance of the Oracle EBS/ERP system, in 2016, Oracle directed that Worth purchase several Oracle software and implementation services, including the following:

        a.      educational classes from "Oracle University," for $29,522.50;

        b.      Oracle i-training for $14,896.00; and

        c.      Oracle i-support service for $214,725.69

collectively referred to as the "Additional Oracle Agreements."  The i-support service agreement consisted of a three-year contract for support.

51.     In reliance upon the continued assurances by Oracle that its system was best suited for Worth, Worth purchased the Oracle services provided in the Additional Oracle Agreements.

52.     EDREi continued the EBS implementation process well into the entire 2016 year, with no "go-live" date on the horizon.  Instead, EDREi, with the daily involvement of Oracle iSupport service, continued with the implementation/"fixing" of the Oracle software, including the following:

        a.      January 2016 – continued EBS implementation, HR/Payroll implementation, data conversion, AP aging report, set up test APPLE BUTTER, AP aging report design and development, testing, PA patching;

        b.      February 2016 – training preparation, training documentation, data conversion, sample job entry/flow, Endeca implementation;

9

c.  March 2016 – converting date to test, EPAY data integration, demo, offsite PPR forecast summary load, testing, training document review, continued work on conversion;

d.  April 2016 – continued EBS implementation, CRM implementation, Endeca implementation, webcenter capture demo documentation, testing;

e.  May and June 2016 – debugging doubling of actuals and revenue costs, Endeca installation and configuration, run full load in test instance;

f.  July 2016 – supplier application, integration, testing, UPK procurement, AIA payroll, employee data correction and updates, fixing of error messages;

g.  August 2016 – debugging payroll cost to project design, sales cloud access issues, tracking offsite change order issues;

h.  September 2016- continued EBS implementation, Oracle payroll implementation; and

i.  December 2016 – migrating codes to test, conversion of submittal data, oracle implementation, payroll, migration to payroll.

53.  By April 2016, EDREi was instructing Worth with training materials and sessions in an effort to "go live" with the Oracle implementation.

54.  During this time, Worth was fine-tuning reports that it wanted to make sure the Oracle product could generate under the program.

55.  The Oracle implementation remained delayed through the summer of 2016.

56.  By the fall 2016, the new target date to "go live" was February 6, 2017.  During this time, Worth, together, with EDREi, was actively moving through all of the modules and determining what the outstanding issues where with the Oracle product.

57.  During the entire 2016 year, EDREi and Worth continued to actively seek Oracle's assistant in the implementation of the EBS software.

58.     After the "go live" date in February 2017, Worth continued to have issues with the Oracle implementation of its ERP system.

59.     On March 1, 2017, Stephen Worth of Worth expressed, in writing, his dissatisfaction with Oracle regarding the failure of Oracle to provide an ERP system compatible for use in Worth's business.

60.     It was after this correspondence that Mr. Worth discontinued the consulting services of EDREi and engaged Monument Data Solutions ("Monument") beginning in April 2017 to work on the continued Oracle implementation and ensuing issues with the integration for Worth's specific desired uses.

61.     Monument spent the balance of 2017 and into 2018, continuously working on issues with the Oracle ERP system, including rewriting programs, AP accrual account issues, project receivable issues, tieback issues, and debugging.

62.     During the entire balance of the year 2017, every Worth department personnel and Monument personnel were in constant contact with Oracle and its iSupport people working out issues with the Oracle ERP system, including the following departments: accounting, construction, HR, mechanical, payroll, and purchasing.

63.     Oracle repeatedly assured and represented to Worth that its EBS software/application would perform as represented and warranted and that it was suitable for Worth's needs.  Worth reasonably relied upon these assurances in continuing to work with Oracle as it attempted to cure the many deficiencies in the EBS software/application.

64.     Over the course of the implementation process, there was not one catastrophic event in the failure of the EBS system to work as represented by Oracle, instead the failures were incremental and never debugged or fixed by Oracle through its iSupport personnel or otherwise.

65.     These systematic failures and inability of Oracle to fix the problems led Worth to determine by 2018 that its business requirements were not met by Oracle's ERP system.

11

1    Oracle's solution of additional customization of its system did not alter the missing

2    functionality originally promised by Oracle to Worth.

3    66.    In spring 2018, Worth made the ultimate decision of discontinuing the use of

4    the Oracle ERP system and began the process of converting to a different ERP system.

5

6                    **Count I – Breach of Contract – Master Agreement**

7    67.    Worth realleges paragraphs 1 through 66 herein.

8    68.    This is an action against Oracle for breach of contract.

9    69.    The purpose of the Master Agreement was to allow Worth to use the Oracle

10   ERP system to meet Worth's requirements and expectations regarding a new ERP system.

11   70.    Oracle warranted in the Master Agreement "that a Program licensed to You

12   will operate in all material respects as described in the applicable Program Documentation."

13   71.    Oracle never provided to Worth a fully functional and operational ERP system

14   as required by the Master Agreement.

15   72.    The ERP system provided to Worth by Oracle did not operate in all material

16   respects as described in the applicable Program Documentation.

17   73.    The breach by Oracle of the Master Agreement is so total and fundamental

18   that the essential purpose of the contract fails, and the limited remedies and warranties

19   provided in the Master Agreement fail of their essential purpose.

20   74.    Oracle represented and warranted in the Master Agreement that it would

21   provide technical support services and Program-related Service Offerings "in a professional

22   manner consistent with industry standards."

23   75.    For multiple years, Worth made clear to Oracle on numerous occasions the

24   problems and defects which prevented the ERP system from being used substantially in

25   accordance with the specifications agreed upon when the Master Agreement was entered

26   into.

27

28

COMPLAINT OF WORTH & COMPANY, INC.   Case No. 3:19-cv-918

76.    Oracle failed to use reasonable commercial efforts to provide fixes consistent with industry standards.

77.    Worth entered into the Master Agreement with Oracle for the latter to provide its full access licenses of an ERP system in return for total payments of $233,480.79.

78.    Despite payment by Worth, the ERP system provided by Oracle has failed to perform as promised, which amounts to material breach of the Master Agreement.

79.    As a direct result of Oracle's material breach of the Master Agreement, Worth has been damaged.

### Count II – Breach of Contract – Subscription Agreement

80.    Worth realleges paragraphs 1 through 66 herein.

81.    This is an action against Oracle for breach of contract.

82.    The purpose of the Subscription Agreement was to allow Worth to use the Oracle ERP system (including, the Oracle Fusion CRM Base Offering Cloud Services) to meet Worth's requirements and expectations regarding a new ERP system.

83.    Oracle warranted in the Subscription Agreement "that a Program licensed to you will operate in all material respects as described in the applicable Program Documentation."

84.    Oracle never provided to Worth fully functional and operational ERP system as required by the Subscription Agreement.

85.    The ERP system provided to Worth by Oracle did not operate in all material respects as described in the applicable Program Documentation.

86.    The breach by Oracle of the Subscription Agreement is so total and fundamental that the essential purpose of the contract fails, and the limited remedies and warranties provided in the Subscription Agreement fail of their essential purpose.

87.    Oracle also represented and warranted in the Subscription Agreement that it would provide technical support services and Program-related Service Offerings "in a professional manner consistent with industry standards."

13

88.     For multiple years, Worth made clear to Oracle on numerous occasions the problems and defects which prevented the ERP system from being used substantially in accordance with the specifications agreed upon when the Subscription Agreement was entered into.

89.     Oracle failed to use reasonable commercial efforts to provide fixes consistent with industry standards.

90.     Worth entered into the Subscription Agreement with Oracle for the latter to provide i-cloud systems in return for total payments of $235,706.69.

91.     Despite payment by Worth, the i-cloud system provided by Oracle failed to perform as promised, which amounts to material breach of the Subscription Agreement.

92.     As a direct result of Oracle's material breach of the Subscription Agreement, Worth has been damaged.

## Count III – Breach of Contract – Additional Oracle Agreements

93.     Worth realleges paragraphs 1 through 66 herein.

94.     This is an action against Oracle for breach of contract.

95.     The purpose of the Additional Oracle Agreements were to provide additional support and training regarding the Oracle ERP system.

96.     Oracle warranted in the Additional Oracle Agreements that the services and products would provide the necessary training and support in connection with the operation of the ERP system in all material respects.

97.     Oracle never provided to Worth fully functional and operational ERP system.

98.     The services provided to Worth, including education classes, training, and support for its ERP system provided to Worth by Oracle did not alleviate, fix, or cure the fundamental purpose of the ERP system.

99.     The breach by Oracle of the Additional Oracle Agreements is so total and fundamental that the essential purpose of the contracts fail, and the limited remedies and warranties provided in the Additional Oracle Agreements fail of their essential purpose.

14

100.   Oracle represented and warranted that it would provide technical support services in a professional manner consistent with industry standards.

101.   For multiple years, Worth made clear to Oracle on numerous occasions the problems and defects which prevented the ERP system from being used substantially in accordance with the specifications agreed upon when the Additional Oracle Agreements were entered into.

102.   Oracle failed to use reasonable commercial efforts to provide fixes consistent with industry standards.

103.   Worth entered into the Additional Oracle Agreements with Oracle for the latter to provide these services in return for total payments of $259,144.19.

104.   Despite payment by Worth, the additional services provided by Oracle failed to perform as promised, which amounts to material breach of the Additional Oracle Agreements.

105.   As a direct result of Oracle's material breach of the Additional Oracle Agreements, Worth has been damaged.

### Count IV – Breach of Duty of Good Faith and Fair Dealing

106.   Worth realleges paragraphs 1 through 66 herein.

107.   Oracle owed a duty to Worth to act in good faith and deal fairly and honestly with Worth.

108.   As described above in detail, Oracle intentionally deliberately, and in bad faith failed to discharge their contractual obligations to Worth, and failed to deal honestly with Worth.

109.   As a result of Oracle's conduct, Worth has been deprived of its reasonable expectation and benefits under the Master Agreement, Subscription Agreement, and Additional Oracle Agreements.

### Count V – Breach of Warranty of Fitness for a Particular Purpose

110.   Worth realleges paragraphs 1 through 66 herein.

111.   Worth presented a clear list of requirements and expectations to Oracle for the ERP system.

112.   Oracle represented to Worth that the Oracle ERP system software would meet those specific requirements.

113.   The ERP system that Oracle provided to Worth failed and was never capable of meeting the specific requirements and expectations stated by Worth.

114.   Worth bargained for operable system which was warranted as being suitable for a particular purpose, and the ERP system provided by Oracle was never capable of being suitable for Worth's needs.

115.   The breach by Oracle of the Master Agreement, Subscription Agreement, and Additional Oracle Agreements is so total and fundamental that the essential purposes of the contracts failed, and the limited remedies and warranties provided in the agreements fail of their essential purpose.

116.   Worth has been damaged by Oracle's total and fundamental beach of the warranty of fitness for a particular purpose under the agreement in an amount in excess of $700,000.00.

### Count VI – Breach of Warranty of Merchantability

117.   Worth realleges paragraphs 1 through 66 herein.

118.   Worth presented a clear list of requirements and expectations to Oracle for the ERP system.

119.   Oracle presented the ERP system as being capable of meeting the needs of Worth and as being a functional and operational software program.

120.   The ERP system provided by Oracle was never a fully functioning and operational and integrated software program and was unfit for the ordinary purpose upon which Worth made the purchase.  The Oracle system never met, nor could have ever met, Worth's reasonable expectations.

16

121.   The inability to provide a fully functional and operational system to Worth, which would meet the ordinary purpose for which the system was needed, as a total and fundamental breach of the contract and warranty.

122.   Worth has been damaged by Oracle's total and fundamental breach of the warranty of merchantability under the Master Agreement, Subscription Agreement, and Additional Oracle Agreements in an amount in excess of $4,500,000.00.

### Count VII – Rescission of Master Agreement

123.   Worth realleges paragraphs 1 through 66 herein.

124.   Oracle's breaches of the Master Agreement resulted in the software and services Oracle was to provide to be absolutely useless to Worth and destroyed the essential objects of the Master Agreement.

125.   As such, as an alternative remedy to a judgment for money damages as requested in Count I hereof, Worth is entitled to rescind the Master Agreement and related agreements and to restitution of all amounts paid thereunder, and interest at the statutory rate from date of payment through the date of satisfaction of any judgment.

### Count VIII – Rescission of Subscription Agreement

126.   Worth realleges paragraphs 1 through 66 herein.

127.   Oracle's breaches of the Subscription Agreement resulted in the software and services Oracle was to provide to be absolutely useless to Worth and destroyed the essential objects of the Subscription Agreement.

128.   As such, as an alternative remedy to a judgment for money damages as requested in Count II hereof, Worth is entitled to rescind the Subscription Agreement and related agreements and to restitution of all amounts paid thereunder, and interest at the statutory rate from date of payment through the date of satisfaction of any judgment.

### Count IX – Rescission of Additional Oracle Agreements

129.   Worth realleges paragraphs 1 through 66 herein.

130.    Oracle's breaches of the Additional Oracle Agreements resulted in the software and services Oracle was to provide to be absolutely useless to Worth and destroyed the essential objects of the Additional Oracle Agreements.

131.    As such, as an alternative remedy to a judgment for money damages as requested in Count III hereof, Worth is entitled to rescind the Additional Oracle Agreements and related agreements and to restitution of all amounts paid thereunder, and interest at the statutory rate from date of payment through the date of satisfaction of any judgment.

**Count X– Fraudulent Misrepresentation**

132.    Worth realleges paragraphs 1 through 66 herein.

133.    This is an action against Oracle for fraudulent misrepresentation.

134.    Oracle represented the following to Worth between November 2014 and February 2015:

    a.  That the Oracle ERP would alleviate the key pain points of Worth, including that the Oracle ERP would (i) eliminate the lack of consistent operational and back-office processes and manual process; (ii) provide simple and convenient reporting and data analysis; (iii) provide data integration; (iv) provide timely and accurate information; (v) simplify the data import necessary to Worth's needs; (vi) provide a less cumbersome payroll system; and (vii) provide tracking system necessary in Worth's business.

    b.  That the ERP System would improve Worth's current cumbersome processes, including AP invoice approvals, project change order processes, and its payroll system.

    c.  That the Oracle ERP System would be a simpler process than what Worth currently had with its many manual processes and lack of date integration.

    d.  That the Oracle cloud based ERP System would streamline the process Worth was currently experiencing.

135.   Oracle further represented to Worth in 2016 that if Worth purchased an additional support product from Oracle that the ERP system would work as represented and warranted.

136.   Oracle continued to represent to Worth throughout 2016, 2017 and 2018 that ERP system would work for its intended purpose if properly implemented.   Oracle represented to Worth in April 2017 that the ERP system would work if Worth terminated EDREi and engaged Monument to complete implementation of the ERP System.   The representations in paragraphs 133- 136 above are collectively referred to as the "Representations".

137.   At the time Oracle made the Representations, Oracle knew the Representations were false.

138.   The Representations continued to be made to Worth during the delay of the "go live" date and while Worth experienced considerable failures in the Oracle ERP processes.

139.   Oracle made the Representations with the intent that Worth would rely on the Representations by entering into the Master Agreement, the Subscription Agreement and the Additional Oracle Agreements by paying the monies due under the agreements.   Oracle also knew that Worth would rely on the Representations by devoting substantial resources to implementing the product it was purchasing from Oracle.

140.   Worth relied on Oracle's Representations by entering into the Master Agreement, Subscription Agreement, and Additional Oracle Agreements, paying the amounts due under those agreements, and by devoting substantial resources to implementing the product it was purchasing from Oracle.

141.   Worth was damaged by its reasonable reliance on Oracle's representations.   For example, Worth would not have entered into the Master Agreement, the Subscription Agreement, and/or the Additional Oracle Agreement, would not have paid the monies due under those agreements, and would not have devoted substantial resources in attempting to implement the product purchased from Oracle.

142. The conduct of Oracle was willful, malicious and/or fraudulent and subjects it to exemplary damages.

### Count XI – Negligent Misrepresentation

143. Worth realleges paragraphs 1 through 66 herein.

144. This is an action against Oracle for negligent misrepresentation.

145. Oracle represented the following to Worth between November 2014 and February 2015:

    a. That the Oracle ERP would alleviate the key pain points of Worth, including that the Oracle ERP would (i) eliminate the lack of consistent operational and back-office processes and manual process; (ii) provide simple and convenient reporting and data analysis; (iii) provide data integration; (iv) provide timely and accurate information; (v) simplify the data import necessary to Worth's needs; (vi) provide a less cumbersome payroll system; and (vii) provide tracking system necessary in Worth's business.

    b. That the ERP System would improve Worth's current cumbersome processes, including AP invoice approvals, project change order processes, and its payroll system.

    c. That the Oracle ERP System would be a simpler process than what Worth currently had with its many manual processes and lack of date integration.

    d. That the Oracle cloud based ERP System would streamline the process Worth was currently experiencing.

146. Oracle further represented to Worth in 2016 that if Worth purchased an additional support product from Oracle that the ERP system would work as represented and warranted.

147. Oracle continued to represent to Worth throughout 2016, 2017 and 2018 that ERP system would work for its intended purpose if properly implemented.   Oracle

20

represented to Worth in April 2017 that the ERP system would work if Worth terminated EDREi and engaged Monument to complete implementation of the ERP System.   The representations in paragraphs 144- 146 above are collectively referred to as the "Representations".

148.   At the time Oracle made the Representations, Oracle should have known the Representations were false.

149.   The Representations continued to be made to Worth during the delay of the "go live" date and while Worth experienced considerable failures in the Oracle ERP processes.

150.   Oracle made the Representations with the intent that Worth would rely on the Representations by entering into the Master Agreement, the Subscription Agreement, and the Additional Oracle Agreement, and by paying the monies due under the agreements.   Oracle also knew that Worth would rely on the Representations by devoting substantial resources to implementing the product it was purchasing from Oracle.

151.   Worth relied on Oracle's Representations by entering into the Master Agreement, the Subscription Agreement, and the Additional Oracle Agreements, paying the amounts due under those agreements, and by devoting substantial resources to implementing the product it was purchasing from Oracle.

152.   Worth was damaged by its reasonable reliance on Oracle's representations.  For example, Worth would not have entered into the Master Agreement, the Subscription Agreement, and the Additional Oracle Agreements, would not have paid the monies due under those agreements, and would not have devoted substantial resources in attempting to implement the product purchased from Oracle.

### Count XII – Breach of Warranty

153.   Worth realleges paragraphs 1 through 66 herein.

154.   This is an action against Oracle for breach of warranty.

155.   Oracle represented the following to Worth between November 2014 and February 2015:

21

a.   That the Oracle ERP would alleviate the key pain points of Worth, including that the Oracle ERP would (i) eliminate the lack of consistent operational and back-office processes and manual process; (ii) provide simple and convenient reporting and data analysis; (iii) provide data integration; (iv) provide timely and accurate information; (v) simplify the data import necessary to Worth's needs; (vi) provide a less cumbersome payroll system; and (vii) provide tracking system necessary in Worth's business.

b.   That the ERP System would improve Worth's current cumbersome processes, including AP invoice approvals, project change order processes, and its payroll system.

c.   That the Oracle ERP System would be a simpler process than what Worth currently had with its many manual processes and lack of date integration.

d.   That the Oracle cloud based ERP System would streamline the process Worth was currently experiencing.

156.   Oracle further represented to Worth in 2016 that if Worth purchased an additional support product from Oracle that the ERP system would work as represented and warranted.

157.   Oracle continued to represent to Worth throughout 2016, 2017 and 2018 that ERP system would work for its intended purpose if properly implemented.   Oracle represented to Worth in April 2017 that the ERP system would work if Worth terminated EDREi and engaged Monument to complete implementation of the ERP System.   The representations in paragraphs 154- 156 above are collectively referred to as the "Warranties".

158.   At the time Oracle made the Warranties, Oracle knew the Warranties were false.

159.   The Warranties continued to be made to Worth during the delay of the "go live" date and while Worth experienced considerable failures in the Oracle ERP processes.

22

160.   Oracle breached the Warranties by failing to provide a fully functioning and operational and integrated software program that would work for the intended purpose.

161.   Worth was damaged by Oracle's breach of the Warranties.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Worth prays for judgement against Oracle, as follows:

As to Counts I, II, III, IV, V, VI, XI and XII:

1.   Compensatory damages according to proof;

2.   Prejudgment Interest;

3.   Attorneys' fees;

4.   Costs of the suit; and

5.   For such other and further relief as the Court may deem proper.

As to Count X:

1.   Compensatory damages according to proof;

2.   Exemplary damages according to proof;

3.   Prejudgment Interest;

4.   Costs of the suit; and

5.   For such other and further relief as the Court may deem proper.

As to Counts VII, VIII, and IX:

1.   An order rescinding the Master Agreement, the Subscription Agreement, the Additional Oracle Agreements and related agreements;

2.   Restitution of all amounts paid thereunder,

3.   For prejudgment interest;

4.   Costs of the suit; and

5.   For such other and further relief as the Court may deem proper.

23

1

2

**<u>JURY DEMAND</u>**

3

Worth & Company, Inc. demands a jury trial on all issues that are triable to a jury.

4

5

6    Dated:      February 20, 2019                    Pacheco & Neach PC

7

8                                                    By:  /s/ Brian Neach

9                                                         Brian Neach
                                                          *Counsel for Plaintiff Worth & Company,*
10                                                        *Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24